**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TREVIYON DESHAWN REW,<br><br>                                    Petitioner,<br><br>v.<br><br>DEAN BORDERS, Warden,<br><br>                                    Respondent. | Case No.:  18cv1481 LAB (MDD)<br><br>**REPORT AND RECOMMENDATION RE: DENIAL OF HABEAS CORPUS PETITION** |

I.     <u>**INTRODUCTION**</u>

        Petitioner Treviyon Deshawn Rew, a state prisoner proceeding with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition" or "Pet."), challenges his conviction for murder and torture in San Diego Superior Court case no. SCS263789.  The Court has read and considered the Petition, [ECF No. 1], the Answer and Memorandum of Points and Authorities in Support of the Answer [ECF No. 7-1], the lodgments and other documents filed in this case, and the legal arguments presented by both parties.[1] For the reasons discussed below, the Court recommends the petition be **DENIED.**

/ / /

---

[1] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the court's electronic case filing system.

## II. FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parle v. Fraley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The state appellate court recounted the facts as follows:

*Counts 1, 2, and 3 (Attempted Murder of Sean Simpson)*

> On July 22, 2010, at about 1:00 a.m., Sean Simpson parked his car at his apartment complex and got out of the car. Immediately afterwards, Rew pointed a gun in Simpson's face. Simpson told Rew to take the car, adding: "My bad, cuz." Rew replied, "Cuz what? I'm a Blood." Simpson immediately lay face down on the ground in the hope his life would be spared, and in order to facilitate Rew's taking the car. A male entered the passenger side of Simpson's car and Rew entered the driver's side. Shortly afterwards, Rew and the person in the passenger seat both fired gunshots at Simpson. Simpson was in a coma for almost one month. Simpson was required to use a colostomy bag for one year. At the time of trial, Simpson still suffered numbness in his leg, and between seven to nine bullets and bullet fragments were lodged in his body. He could no longer fully carry out his previous job duties. Simpson identified Rew in a photo lineup.

*Counts 4, 5, and 6 (Robbery of Irish Tourists)* [FN 4]

> [FN 4: Although the jury deadlocked on these charges, we mention the underlying facts here to evaluate the trial court's decision to deny Rew's motion to sever the charges.]

> San Diego Police Detective Mary Grace Gibbins testified that on July 22, 2010, three female tourists were robbed of their cell phones and cameras at gunpoint as they stood outside a hostel in Ocean Beach. Approximately two weeks later, police recovered a digital camera belonging to one of the victims. Rew's pictures were among those found in the camera.

///
///

*Counts 12, 13, 14, 15, and 16 (Crimes against Martin Rodriguez and Carlos Avila)*

Martin Rodriguez testified that on July 24, 2010, at approximately 2:00 a.m., after a night of drinking, he and Carlos Avila slept in Rodriguez's car. Rodriguez heard a banging on the car window and someone shouting, "Get the fuck out." Shortly afterwards, Rew fired a gunshot that shattered the car window, causing glass to hit Rodriguez's face. Rew demanded Rodriguez's car keys, which fell. Rew grabbed them, fired another shot, ran and drove away in a different car. One bullet was lodged in the roof of Rodriguez's car and narrowly missed Avila's torso, while another bullet, which matched that used by Rew's .38-caliber gun, was lodged in Avila's shoe.

*Counts 7, 8, 9 and 10 (Robbery of Jesse Aceves and Manuel Cuevas)*

Jesse Aceves testified that on July 24, 2010, at approximately 3:00 a.m., finding no hotel in San Diego, he and Manuel Cuevas stopped in National City and slept in the car they had been driving. Aceves heard a noise and woke up. Rew pointed a gun at Aceves, and ordered him out of the car. Rew hit Aceves in the face with the gun, demanded money, fired a shot to the side of Aceves's head, and fired two more shots to the ground. Rew also demanded Cuevas's money. Rew took approximately $3,000 from the victims, their cell phones, a laptop and Cuevas's passport.

*Count 17 (Possession of a Concealed Weapon)*

On July 25, 2010, at approximately 8:55 p.m., San Diego Police Officer Mario Perez and his partner were on patrol when Officer Perez saw Rew quickly walking away from a Mazda and looking nervous upon seeing the police. Officer Perez exited his vehicle and talked to Rew. Rew put his hand in his right front shorts pocket. Officer Perez decided to pat down Rew for weapons and found in Rew's right front pocket a Taurus revolver that was loaded with five .38-caliber bullets. Officer Perez handcuffed Rew. Police later ascertained the Mazda belonged to Rew's great-great-grandfather who, along with Rew, gave police permission to search it. In the Mazda, police found a loaded .45-caliber Sig Sauer semiautomatic weapon, a cell phone and a camera.

/ / /

/ / /

*Count 18 (Evading a Peace Officer)*

On July 28, 2010, San Diego Police Officer Tobia Terranova responded to a police call regarding a suspect travelling in a vehicle. Officer Terranova saw the suspect car, activated his overhead lights and siren, and followed it. Rew disregarded several traffic signs as he led police on a high speed chase. Eventually, Rew stopped the car in the middle of the road, got out, ran over fences and eluded the police. Rew ended up at the home of his good friend, David Ruiz, and told him he had just crashed a car in a high-speed chase. Hours later, police found Rew hiding in Ruiz's home. Police arrested both Rew and Ruiz, but never charged Ruiz.

Ruiz testified that in July 2010, Rew said he had shot someone who referred to Rew as "cuz," which Rew, as a Crip gang member, disliked. Ruiz knew Rew was calling people on the telephone and asking them to hide guns. Rew also was selling a cell phone, and Ruiz's relative, Daniel Camargo, bought the phone. One day, Rew went to Ruiz's house wanting to take some pictures with a camera, including pictures of Rew with a gun on his person. Ruiz had told police that he had seen Rew carry a .38-caliber gun, and another friend of Rew's carried a gun that looked like a .22-caliber pistol. Ruiz said he believed Rew belonged to the 5/9 Brim gang.

*Police Investigation*

National City Police Sergeant Derek Aydelotte investigated the attempted murder of Simpson, and learned Rew had recently been arrested in a Mazda vehicle. Pursuant to a warrant, Officer Aydelotte searched Rew's residence and found a key to Simpson's Toyota, Cuevas's passport, a sawed-off shotgun that was chambered with 30-30 rounds of ammunition and a box of .25-caliber ammunition. Officer Aydelotte learned of the Ocean Beach robbery, and saw photographs of Rew taken with a stolen camera. In one photo, Rew posed with a large amount of cash.

Salvador Moreno, with the aid of surveillance video footage showing Moreno in different stores, testified that on different occasions in July 2010, Rew gave him money to buy ammunition for Rew's different caliber weapons, including .25-caliber and 30-30 bullets. One day, Moreno saw Rew with a .38-caliber revolver in his pocket. Rew told Moreno that he had chopped the stalk of a rifle for ease of carry and for it to cause more damage. Moreno stated Rew was a member of the 5/9 Brim gang. Moreno identified a vehicle that Rew drove, which Rew had described as "hot," meaning it was

stolen. On July 27, 2010, Rew called Moreno and said, "Know who this is? I don't want to say any names. They got a video of someone buying bullets."

On cross-examination, Moreno testified police contacted him on July 27, 2010, and he was concerned he was a suspect in the criminal matters involving attempted robbery, carjacking, and robbery, but he was not arrested. Moreno testified that for the past two and a half years the district attorney had paid for his rent, utility expenses, food, clothes, and phone bill. On redirect examination, Moreno testified that the district attorney's payments were occasioned by his having to relocate due to safety concerns.

(Lodgment No. 26, ECF No. 8-26 at 4-8.)

## III. PROCEDURAL BACKGROUND

Petitioner Treviyon Deshawn Rew was charged in a third amended consolidated information with three counts of attempted murder, a violation of California Penal Code (Penal Code) §§ 187(a) and 664 (counts one, twelve and thirteen), one count of carjacking, a violation of Penal Code § 215(a) (count two), three counts of assault with a firearm, a violation of Penal Code § 254(a)(1) (counts three, eight, and ten), five counts of robbery, a violation of Penal Code § 211 (counts four, five, six, seven and nine), one count of receiving stolen property, a violation of § 496(a), one count of attempted carjacking, a violation of Penal Code §§ 251(a) and 664 (count fourteen), two counts of assault with a deadly weapon, a violation of Penal Code § 245(a)(1) (counts fifteen and sixteen), one count of having a concealed weapon, a violation of Penal Code § 12025(a)(2) (count seventeen), and one count of evading a police officer, a violation of California Vehicle Code § 2800.1(a) (count eighteen). (Lodgment No. 17, ECF No. 8-17 at 51-59.) The information also alleged various firearm enhancements, specifically that Rew was armed with a firearm during the commission of the crimes, within the meaning of Penal Code § 12022(a)(1) (counts one, two, seven, nine, twelve, thirteen and fourteen), that Rew personally and intentionally used and discharged a firearm, within the meaning of Penal Code § 12022.53(d) and e(1) (counts one and two), and that Rew personally used a firearm, within the meaning of Penal Code § 12022.5(a) (counts four through six),

as well as gang allegations, specifically that Rew committed the offenses for the benefit of, at the direction of and in association with a criminal street gang, within the meaning of Penal Code § 186.22(b)(1) (counts one, two and three), and that he did so with the specific intent to promote and assist criminal conduct by gang members, within the meaning of Penal Code § 186.22(b)(4) (count two). (*Id.*) The information also contained an allegation that Rew committed the offenses while released on bail, within the meaning of Penal Code § 12022.1(b) (counts one through sixteen). (*Id.*)

Following a jury trial, Rew was convicted of counts one through three and seven through seventeen. (Lodgment No. 18, ECF No. 8-18 at 142-46.) The jury did not return a verdict on counts four through six. (Lodgment No. 13, ECF No. 8-13 at 11.) Rew was sentenced to a prison term of 63 years and eight months plus 65 years-to-life. (Lodgment No. 16, ECF No. 8-16 at 33.)

Rew appealed his conviction to the California Court of Appeal for the Fourth Appellate District. (Lodgment Nos. 21-25, ECF Nos. 8-21 – 8-25.) The state appellate court upheld Rew's conviction in a written, unpublished opinion but determined that the evidence was insufficient to support the gang enhancements contained in counts one through three. (Lodgment No. 26, ECF No. 8-26.) The appellate court struck the gang enhancements and the firearm use enhancements associated with counts one and two and remanded the case to the superior court for resentencing. (*Id.* at 36-38.) Rew then filed a petition for review in the California Supreme Court, which denied the petition without citation of authority. (Lodgment Nos. 27-28, ECF Nos. 8-27 – 8-28.)

Rew next filed a petition for writ of habeas corpus in the San Diego Superior Court. (Lodgment No. 29, ECF No. 8-29.)[2] The superior court denied the petition in a written opinion. (Lodgment No. 30, ECF No. 8-30.) He then filed a petition for writ of habeas corpus in the state appellate court, which that court denied in a written,

---

[2] Rew was resentenced in the San Diego Superior Court on June 17, 2016, eight days after he filed his habeas corpus petition in that court. (Pet., ECF No. 1-3.)

unpublished opinion.  (Lodgment Nos. 31-32, ECF Nos. 8-31 – 8-32.)  Rew filed a petition for writ of habeas corpus in the California Supreme Court, which denied the petition without citation of authority.  (Lodgment Nos. 33-34, ECF Nos. 8-33 – 8-34.)

Rew filed a Petition for Writ of Habeas Corpus in this Court on June 27, 2018.  (ECF No. 1.)  Respondent filed an Answer and Memoradum of Points and Authorities in Support of Answer on September 27, 2018.  (ECF Nos. 7, 7-1.)  Rew did not file a Traverse.

## IV.   <u>DISCUSSION</u>

Rew's petition contains five claims.  Claim one alleges a due process violation stemming from his re-sentencing hearing.  Claim two alleges the jury was misinstructed.  In claim three, Rew alleges his severance motion was improperly denied.  Rew contends his trial counsel was ineffective in claim four.  And in claim five, Rew argues that gang evidence admitted at trial rendered his trial unfair.  (Pet., ECF No. 1 at 34-47.)

Respondent argues that all of Rew's claims are procedurally defaulted.  (Answer, ECF No. 7-1 at 9, 11, 18-21, 19 n.4, 26.)  In addition, Respondent contends claims one, two and three do not present a federal question, and, in the alternative, the state court's rejection of the claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (*Id.* at 21-31.)  As to claims four and five, Respondent argues the state court's resolution of those claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (*Id.* at 31-36.)

A. *Procedural Default*

The Ninth Circuit has held that because procedural default is an affirmative defense, in order to establish a claim is procedurally defaulted, Respondent must first "adequately [plead] the existence of an independent and adequate state procedural ground . . . ." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).  In order to place the defense at issue, Rew must then "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure . . . ." *Id*.  The "ultimate burden" of proving procedural default, however, belongs to the state.  *Id*.  If the state meets its burden under

*Bennett*, federal review of the claim is foreclosed unless Rew can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Supreme Court has limited the "miscarriage of justice" exception to petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In *Wood v. Hall*, 130 F.3d 373, 379 (9th Cir. 1997), the Ninth Circuit held that "actual innocence" means factual innocence, not simply legal insufficiency; a mere showing of reasonable doubt is not enough.

A state procedural rule is "independent" if the state law basis for the decision is not interwoven with federal law. *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983); *Harris v. Reed*, 489 U.S. 255, 265 (1989). A ground is "interwoven" with federal law if the state has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed. *See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009).) All cases cited by a state court must be independent and adequate to bar federal review of the claims. *Washington v. Cambra*, 208 F.3d 832, 834 (9th Cir. 2000).

1. *Claim One: Denial of an Evidentiary Hearing to Present Youth Offender Evidence*

Because the California Supreme Court summarily denied Rew's habeas corpus petition in which he raised this claim, this Court must "look through" to the state appellate court's decision to determine whether the claims are procedurally defaulted. *Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). With regard to claim one, that Rew's due process rights were violated when he was denied an opportunity to present evidence which would be relevant to future youth offender parole hearing pursuant to California

8

Penal Code § 3051 and § 4801(c), the state appellate court concluded as follows:

> The claim that Rew is entitled to an evidentiary hearing to submit information that may be relevant to a future youth offender parole hearing is barred because it was not raised at the resentencing hearing. Before Rew was resentenced in June 2016, the statutes authorizing parole hearings for offenders who had not yet reached the age of 23 years when they committed their offenses were in effect (Pen. Code §§ 3051, 4801, subd. (c)), and the Supreme Court of California had ruled that the parties must be given a sufficient opportunity "to make a record of the juvenile offender's characteristics and circumstances at the time of the offense so that the Board [of Parole Hearings], years later, may properly discharge its obligation to 'give great weight to' youth-related factors [citation] in determining whether the offender is 'fit to rejoin society' despite having committed a serious crime 'while he was a child in the eyes of the law' [citation]" (*People v. Franklin* (2016) 63 Cal.4th 261, 284). Rew admits, however, that at the resentencing hearing he did not request an opportunity to present evidence regarding any youth-related factors pertinent to his crimes and culpability. "[J]ust as a defendant generally may not raise *on appeal* a claim not raised at trial [citation], a defendant should not be allowed to raise *on habeas corpus* an issue that could have been presented at trial." (*In re Seaton* (2004) 34 Cal.4th 193, 200.) In any event, Rew has not identified any youth-related information that would bear favorably on his future parole prospects and that he would have presented had he been granted a hearing at which to do so. Without such information, this court cannot determine that the lack of any such hearing will result in "'excessive punishment' in violation of the Constitution," as alleged by Rew, or will otherwise prejudice him. His conclusory assertions to that effect are insufficient to sustain his pleading burden. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.)

(Lodgment No. 32, ECF No. 8-32 at 2-3.)

Respondent argues the state appellate court's citation to *In re Seaton* invokes California's contemporaneous objection rule, which is independent and adequate. (Answer, ECF No. 7-1 at 19.) In *Melendez v. Pliler*, 288 F.3d 1120 (9th Cir. 2002), the Ninth Circuit stated that California's contemporaneous objection rule has been consistently applied "when a party has failed to make *any* objection to the admission of evidence." *Id.* at 1125, citing *Garrison v. McCarthy*, 653 F.2d 374, 377 (9th Cir. 1981). The issue in Rew's case, however, is not the failure to object to the admission of evidence

but rather the failure of the trial court to provide Rew with an opportunity to present evidence relevant to a future youth offender parole hearing.  It is not clear to this Court that *In re Seaton* is an independent and adequate state procedural ground applicable to the issue raised by Rew.

Established precedent in the Ninth Circuit dictates that a court's decision on the issue of procedural default is to be informed by furthering "the interests of comity, federalism, and judicial efficiency."  *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998).  Thus where, as here, deciding the merits of a claim proves to be less complicated and less time-consuming than adjudicating the issue of procedural default, a court may exercise discretion in its management of the case to reject the claims on their merits and forgo an analysis of cause and prejudice.  *Batchelor v. Cupp*, 693 F.2d 859, 864 (9th Cir. 1982).  Accordingly, the Court will address the merits of claim one.

2. *Claims Two and Three: Instructional Error and Denial of the Motion to Sever*

Respondent contends that claims two and three are also procedurally defaulted. (Answer, ECF No. 7-1 at 19 n. 4.)  Because the California Supreme Court summarily denied Rew's habeas corpus petition in which he raised these claims, this Court must "look through" to the state appellate court's decision to determine whether the claims are procedurally defaulted.  *Ylst*, 501 U.S. at 805-06.  The state appellate court concluded as follows:

> Rew's claims alleging instructional error and erroneous refusal to sever counts for trial are barred because they were considered and rejected on appeal.  "[L]egal claims that have previously been raised and rejected on direct appeal ordinarily cannot be reraised in a collateral attack by filing a petition for a writ of habeas corpus."  (*In re Reno* (2012) 55 Cal.4th 428, 476.)  Rew has not identified any jurisdictional error, fundamental constitutional error, or change in law that would warrant reconsideration of these previously rejected claims.  (*Id.* at p. 478.)

(Lodgment No. 32, ECF No. 8-32 at 3.)

The relevant page of *In re Reno* cited by the appellate court, page 476, reads as follows:

There may be no more venerable a procedural rule with respect to habeas corpus than what has come to be known as the *Waltreus* rule; that is, legal claims that have previously been raised and rejected on direct appeal ordinarily cannot be reraised in a collateral attack by filing a petition for a writ of habeas corpus.

*In re Reno*, 55 Cal. 4th at 476.

This is simply a restatement of the rule announced in *In re Waltreus*, 62 Cal. 2d 218, 225 (1965). The Ninth Circuit has repeatedly held that a citation to *Waltreus* does not bar federal review. *See Hill v. Roe*, 321 F.3d 787, 788 (9th Cir. 2003); *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1131 (9th Cir. 1996); *Samoya v. Ayers*, 649 F. Supp. 2d 1102, 1115 (S.D. Cal. 2009). Accordingly, Respondent has not met his burden under *Bennett* to "adequately [plead] the existence of an independent and adequate state procedural ground . . . ." *Bennett*, 322 F.3d at 586. Claims two and three are therefore not procedurally defaulted.

3. *Claims Four and Five: Ineffective Assistance of Counsel and Admission of Gang Evidence*

Respondent argues claims four and five are procedurally defaulted because the state appellate court concluded the claims were untimely, citing *In re Reno*, 55 Cal.4th at 459-60, *People v. Swain*, 34 Cal. 2d 300, 302 (1949), and *In re Dixon*, 41 Cal.2d 756, 759 (1953). (Answer, ECF No. 7-1 at 19.) In *Walker v. Martin*, 562 U.S. 307 (2011), the Supreme Court concluded that California's untimeliness rule is independent and adequate. *Id.* at 321-22. Accordingly, Respondent has "adequately [plead] the existence of an independent and adequate state procedural ground . . . ." *Bennett*, 322 F.3d at 586. Rew has not asserted any "specific factual allegations that demonstrate the inadequacy of the state procedure . . . ." and federal review of the claim is therefore foreclosed unless Rew can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Rew has not offered any cause for the default and, as discussed below in section IV(B)(5) and (6), he has not

established either actual prejudice or a fundamental miscarriage because the claims are meritless.

B. *Merits*

Rew contends in claim one that the trial court had a sua sponte duty to ensure he had an opportunity to present evidence at his re-sentencing hearing which would be relevant to a future youth offender parole hearing under California Penal Code §§ 3051 and 4801(c). In the alternative, he claims his trial counsel was ineffective for failing to ask for such a hearing. (Pet., ECF No. 1 at 34-37.) Rew contends in claim two that the jury was not properly instructed because the trial court failed to tell the jury they could consider any leniency witnesses may have received from the prosecution when evaluating their testimony. (*Id*. at 37-41.) In claim three, he argues the trial court should have granted his severance motion because the admission of evidence relating to the carjacking and shooting of Sean Simpson was inflammatory and because the strength of the evidence for each count "was so variant" that a weak case on any one of the charges would be tried with a stronger case, thus permitting the jury to convict Rew of the weak charges based on evidence of the stronger charges. (*Id*. at 41-42.) In claim four, he alleges trial counsel was ineffective for failing to identify and present witnesses and for failing to consult a ballistics expert. (*Id*. at 42-43.) Finally, in claim five, he argues gang evidence admitted at trial, which the appellate court concluded was insufficient to support the jury's true finding on the gang allegations, prejudiced his right to a fair trial by inflaming the jury with evidence that should not have been admitted. (*Id*. at 43-44.)

1. *Standard of Review*

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst*, 501 U.S. at 805-06. If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). Clearly established federal law, for purposes of § 2254(d),

means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

    2. *Denial of an Opportunity to Present Youth Offender Evidence (claim one)*

    In 2012, the United States Supreme Court decided *Miller v. Alabama*, 567 U.S. 460 (2012), which held that a mandatory sentence of life without parole for a juvenile defendant violated the Eighth Amendment. *Id.* at 470. Following *Miller*, the California legislature enacted Penal Code §§ 3051 and 4801(c) in 2013 to comply with *Miller*. *See* Cal. Penal Code §§ 3051, 4801(c) (West 2018). Penal Code § 3051 applies to "any prisoner who was 25 years of age or younger, or was under 18 years of age as specified in paragraph (4) of subdivision (b), at the time of his or her controlling offense." Cal. Penal Code § 3051(a). The law provides for a "youth offender parole hearing" at which the Board of Parole Hearings is to "give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law." Cal. Penal Code § 4801(c).

    Following his conviction in this case, Rew appealed to the California Court of Appeal for the Fourth Appellate District alleging, in part, that the evidence was insufficient to support the jury's "true" finding on the gang enhancement allegations. (Lodgment Nos. 21, 23, 24, ECF Nos. 8-21, 8-23, 8-24.) In February of 2016, the California Court of Appeal agreed with Rew and remanded his case for resentencing. (Lodgment No. 26, ECF No. 8-26 at 37-38.)[3] In May of 2016, the California Supreme Court decided *People v. Franklin*, 63 Cal. 4th 261 (2016), which found that a limited remand to the sentencing court for the purpose of developing evidence relevant to a future youth offender parole hearing was appropriate for those cases which fell under the provisions of Penal Code §§ 3051 and 4801(c) but had concluded prior to *Franklin*. *Id.* at

---

[3] The state appellate court concluded the firearm allegations contained in counts one and two also had to be stricken. (Lodgment No. 26, ECF No. 8-26 at 37-38.)

286-87.  Rew was resentenced on June 17, 2016 to 45 years plus 50 years-to-life in prison.  (Pet., ECF No. 1-3 at 2-9.)  Rew did not present any evidence relevant to a future youth offender parole hearing at the resentencing hearing.  He argues in this Petition that the sentencing court has a sua sponte duty to ensure Rew had the opportunity to present such evidence.  (Pet., ECF No. 1 at 35-36.)[4]

As Respondent notes in the Answer, the question whether the sentencing judge was required to provide Rew, *sua sponte*, with an opportunity to present youth offender evidence at his re-sentencing is a matter of the state court's interpretation of state law and therefore not cognizable on federal habeas review.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); 28 U.S.C. § 2254(d).  Moreover, Rew's claim he was denied an opportunity to present youth offender information at his resentencing is not properly brought in a federal habeas corpus action.  In *Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016), the Ninth Circuit held that a prisoner may only bring claims via a federal habeas corpus action pursuant to 28 U.S.C. § 2254 if they "lie at the 'core of habeas corpus,'" which are challenges to the validity of a state court conviction or the duration of a state court sentence.  *Id.* at 927, 930.  Rew's claim that he did not have an opportunity to present youth offender evidence at his resentencing hearing does not challenge the validity of his conviction or the duration of his sentence.  If Rew were to be granted relief as to this claim, he would, at most, be entitled to an evidentiary hearing at which he could present evidence relevant to a future youth offender parole hearing.  At that future parole hearing, Rew may or may not be granted parole and have his sentence shortened.  Accordingly, Rew's claim may not be brought via a 28 U.S.C. § 2254 petition and may only be brought, if at all, via a 42 U.S.C. § 1983 claim.  *Id.* at 927, 930.

Finally, even if this Court could consider the claim on the merits, Rew has not

_____

[4] Rew argues that in the alternative, trial counsel was ineffective for failing to present evidence relevant to a future youth offender hearing.  (Pet., ECF No. 1 at 36-37.)  That portion of claim one will be addressed in Section IV(B)(5) along with Rew's other ineffective assistance of counsel claims.

established he is entitled to relief. A federal due process violation occurs when an error in the state court conviction process renders a proceeding fundamentally unfair. *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). On federal habeas review, this Court must determine whether any such error had a substantial and injurious effect on the outcome. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Assuming a due process violation did occur, Rew has not established prejudice pursuant to *Brecht*. He has not directed this Court to any evidence relevant to a future youth offender parole hearing that he would have presented at his re-sentencing hearing. Further, the Court is unable to determine the effect of any such evidence because the outcome of Rew's future youth offender parole hearing is unknowable at this time.

For all the foregoing reasons, the state court's denial of Rew's claim that the trial court violated his federal due process rights when it improperly failed to provide him an opportunity to present youth offender evidence at his re-sentencing hearing is not cognizable in this action and any federal due process error is harmless. Rew is not entitled to relief as to this claim.

### 3. *Jury Instructions (claim two)*

In claim two, Rew argues that the trial judge misinstructed the jury when he failed to include leniency from the prosecutor in CALCRIM No. 226, which provides the jury with factors they may consider in determining the credibility of a witness. (Pet., ECF No. 1 at 37-41.) He contends that portion of the instruction should have been given because two prosecution witnesses, David Ruiz and Salvador Moreno, had criminal liability arising from Rew's case but received lenient treatment from the prosecutor. (*Id.*) Respondent argues this claim does not present a federal question and, in the alternative, the state court's resolution of the claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (Answer, ECF No. 7-1 at 26-28.)

Rew raised this claim in both his direct appeal and in the habeas corpus petition he filed in the California Court of Appeal. (Lodgment Nos. 22, 24, 31, ECF Nos. 8-22, 8-24, 8-31.) Because the state appellate court on habeas review imposed a procedural bar,

which this Court has concluded was not independent and adequate, it did not decide the merits of this claim. The California Court of Appeal's opinion on direct review is the last reasoned state court decision addressing the claim and therefore it is that decision to which this Court must defer. That court wrote:

B. *Applicable Law*

"Generally, a party may not complain on appeal about a given instruction that was correct in law and responsive to the evidence unless the party made an appropriate objection." (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1087.) In determining whether instructional error was harmless, "[a] reviewing court considers 'the specific language challenged, the instructions as a whole[,] the jury's findings' [citation], and counsel's closing arguments to determine whether the instructional error 'would have misled a reasonable jury.'" (*People v. Eid* (201) 187 Cal.App.4th 859, 883.)

C. *Analysis*

On appeal, Rew contends the issue was not forfeited, claiming that defense counsel confusingly replied to the trial court, "Yes. No." Contrary to Rew, we do not detect that defense counsel was confused. Understood in context, defense counsel, having ascertained that the court was referring to CALCRIM No. 226, affirmed that information by saying, "Yes." He immediately proceed to answer the court's question regarding whether it should include the other optional materials by saying, "No." We therefore conclude this claim is forfeited. The defense declined the court's opportunity to request more specific instruction with any other bracketed portion of CALCRIM No. 226. Therefore, Rew may not claim error on appeal. (Accord, *People v. Jennings* (2010) 50 Cal.4th 616, 675 [noting that a standard jury instruction can amount to a pinpoint instruction and finding forfeiture in defendant's failure to request the pinpoint instruction].)

In any event, any error was harmless. The court's instruction informed the jury to consider whether Ruiz and Moreno were biased because of their personal relationship with Rew. Further, the jury heard testimony regarding the prosecutor's supposed leniency toward Ruiz and Moreno, a point that defense counsel reiterated during oral argument. Nonetheless, the jury convicted Rew based on the overwhelming evidence of his guilt: As to counts 1 to 3, Simpson identified Rew in a photo lineup, and his car key was found at Rew's house. As to counts 7 through 10, police found Cuevas's

passport at Rew's house, and photos retrieved from the stolen camera of Rew posing with a large amount of cash, possibly that stolen from Aceves and Cuevas. As to counts 12 through 16, the bullet lodged in Avila's shoe matched that of Rew's gun. As to count 17, the police found the concealed weapon during the pat down of Rew. The evidence supporting the evading a peace officer charge was based on the police officer's description of Rew's clothes, which matched that found at Ruiz's house upon Rew's arrest. Therefore, we conclude it was not reasonably probable that if the court had instructed regarding leniency or bias Rew would have received a more favorable outcome.

(Lodgment No. 26, ECF No. 8-26 at 22-23.)

Instructional error can form the basis for federal habeas corpus relief only if it is shown that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' [citation omitted]." *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006), (citing *Cupp v. Naugh'ten*, 414 U.S. 141, 146 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). The allegedly erroneous jury instruction cannot be judged in isolation, however. *Estelle*, 502 U.S. at 72. Rather, it must be considered in the context of the entire trial record and the instructions as a whole. *Id*.

CALCRIM No. 226 gives the jury a list of things they may consider in determining the credibility of witnesses. The instruction contains several optional paragraphs that can be added depending on the facts of any particular case. (Lodgment No. 18, ECF No. 8-18 at 302 [CALCRIM No. 226].) The paragraph that states "Was the witness promised immunity or leniency in exchange for his or her testimony?" was not included, and Rew claims this was error that "unfairly bolstered the People's case as it prevented the jury from considering a factor which would have lessened the credibility of the only prosecution witnesses who claimed they (1) saw Petitioner with guns, and (2) heard him make incriminating statements." (Pet., ECF No. 1 at 40.)

Ruiz testified that Rew arrived at his house on the evening of July 28, 2010 in a frantic state, telling Ruiz that he had been in a high-speed chase with police and had crashed his car. (Lodgment No. 8, ECF No. 8-8 at 80-81.) Ruiz let Rew stay at his house

overnight and in the morning, Ruiz returned from a doctor's appointment for his son to find police at his house.  (*Id*. at 82.)  Police eventually located Rew inside Ruiz's house and arrested Ruiz and Rew.  (*Id*. 80.)  Ruiz also testified that on or about July 22 or 23, 2010, Rew came to Ruiz's house and told Ruiz he had shot someone because the person had "cuzzed" him.  (*Id*. at 84-85.)[5]  Ruiz also testified that Rew used his phone to call friends and family and ask them to hide his guns, that Rew had taken pictures of Ruiz with a camera that was later linked to the robbery of two women in Ocean Beach, that he had seen Rew in possession of a .38 special handgun, and that Rew had been with another person who possessed a .22 caliber handgun.  (*Id*. at 91-98.)  On cross examination, Ruiz testified police told him he could be arrested and threatened to report him to Child Protective Services for endangering his son by appearing in the photos with Rew.  (*Id.* at 108-09.)  Police were "really on [his] case," and would come to his house every week to pressure him to cooperate, threaten him with arrest, and threaten to have his child taken away.  (*Id.* at 111-12, 117-18.)

Moreno testified he purchased bullets for a .25 caliber weapon, a sawed-off shotgun, a twin gauge shotgun, and a .38 caliber weapon.  (Lodgment No. 9, ECF No. 8-9 at 11-39.)  Moreno testified that he purchased the .22 caliber ammunition on July 2, 2010, he purchased the sawed-off shotgun and twin gauge shotgun ammunition on July 12, and he purchased the .38 caliber ammunition on July 23.  (*Id*. at 17-18, 25.)  Rew's crimes were committed between July 22 and July 28.  (Lodgment No. 26, ECF No. 8-26 at 4-7.)  When Rew arrived at Moreno's house on July 23, he was driving Simpson's gray Toyota which Rew told Moreno was "hot," meaning stolen.  (Lodgment No. 9, ECF No. 8-9 at 25-27; Lodgment No. 6, ECF No. 8-6 at 10.)  Moreno saw Rew in possession of a .25 caliber weapon a few weeks before Rew asked him to buy bullets the first time and with a

---

[5] Blood gangs and Crip gangs are rivals.  Crip gang members refer to each other as "cuz."  "Cuzzing" means calling a Blood gang member "cuz," a sign of disrespect.  (Lodgment No. 11, ECF No. 8-11 at 72.)

.38 caliber revolver on July 23 when Moreno purchased the .38 caliber ammunition. (Lodgment No. 9, ECF No. 8-9 at 13, 37.) Moreno also testified that Rew was a member of the 5/9 Brims gang. (*Id.* at 43.) On cross-examination, Moreno admitted that he was questioned by police about Rew's crimes and he was worried he could be implicated in them. (*Id.* at 47.) He testified he would do "whatever [he] could not to be a defendant in those kind of charges," and that he "told the police whatever [he] felt they wanted to hear from [him]." (*Id.*) Moreno conceded he had never been arrested or charged in connection with Rew's crimes and that the District Attorney's office had paid him approximately $12,000 a year for two years. (*Id.* at 47-51.)

The jury was instructed to "use your common sense and experience" in evaluating testimony and to consider whether "the witness's testimony was influenced by a factor such as bias or prejudice, a personal relationship with someone involved in the case, or a personal interest in how the case was decided." (Lodgment No. 18, ECF No. 8-18 at 302 [CALCRIM No. 226].) A juror using his or her common sense and experience would consider how Ruiz's and Moreno's personal relationship with Rew and the financial payments, threats of prosecution and threats of being reported to Child Protective Services could influence their testimony. In addition, the jury instructions told the jury that before they could consider Ruiz's and Moreno's testimony, they had to determine whether they were accomplices in Rew's crimes, and if they so determined they should view their testimony with caution. (*Id.* at 314-15 [CALCRIM No. 334].) They were further instructed that they were to give the testimony of accomplices "the weight you think it deserves after examining it with care and caution and in the light of all the other evidence." (*Id.* at 315.)

Considering the instructions provided to the jury as a whole, as this Court is required to do under *Estelle*, the jury was sufficiently alerted to the fact that they should consider any benefits or leniency Ruiz and Moreno received in evaluating their credibility, and therefore "the ailing instruction by itself [did not] so infect[] the entire trial that the resulting conviction violates due process.'" *Clark*, 450 F.3d at 904, citing

*Estelle*, 502 U.S. at 72 and *Cupp*, 414 U.S. at 146.  The state court denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  *Yarborough*, 540 U.S. at 4.  Nor was it based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d)(2).  Rew is not entitled to relief as to this claim.

    4.  *Severance Motion (claim three)*

    Rew argues in claim three that the state court improperly denied his severance motion, thereby rendering his trial fundamentally unfair.  (Pet., ECF No. 1 at 41-42.)  Specifically, he contends that the facts surrounding the carjacking and shooting of Simpson were inflammatory and the strength of the evidence presented for the other crimes was "so variant" that it is likely the jury convicted Rew of crimes based on the sum total of all of the evidence rather than evidence specific to those crimes.  Respondent argues Rew does not state a cognizable federal claim and, in the alternative, the state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Answer, ECF No. 7-1 at 28-31.)

    As with the preceding claim, Rew raised this claim in both his direct appeal and in the habeas corpus petition he filed in the California Court of Appeal.  (Lodgment Nos. 22, 24, 31, ECF Nos. 8-22, 8-24, 8-31.)  Because the state appellate court on habeas review imposed a procedural bar, which this Court has concluded was not independent and adequate, it did not decide the merits of this claim.  The California Court of Appeal's opinion on direct review is the last reasoned state court decision addressing the claim and therefore it is that decision to which this Court must defer.  That court wrote:

> We conclude the court did not err by consolidating the charges, which with the exception of the concealed weapon and evasion of a peace officer counts, involved assaultive conduct that Rew committed over a three-day span.  As the court explained, the evidence relating to the different crimes was cross-admissible.  Specifically, police found at Rew's home evidence relating to Simpson's car and Cuevas's passport.  The photos in the camera also showed Rew displaying some money, which the jury reasonably could conclude was part of the approximately $3,000 that Rew had robbed from

Aceves and Cuevas.  Further, Moreno's testimony and the video surveillance tapes established that Moreno bought for Rew different caliber ammunition matching the weapons that Rew used in the different crimes.  Under *People v. Merriman*, *supra*, 60 Cal.4th at p. 38, the cross-admissibility of evidence alone sufficed to justify the trial court's decision to deny Rew's motion to sever.  We discern no prejudice to Rew from the joinder of charges.

(Lodgment No. 26, ECF No. 8-26 at 19-20.)

"The Supreme Court has never held that a trial court's failure to provide separate trials on different charges implicates a defendant's right to due process." *Collins v. Uribe*, No. 11-56297, 564 Fed. Appx. 343 (9th Cir. 2014)[6] citing *Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010); *see also Martinez v. Yates*, No. 13-16154, 2014 WL 5293673 (9th Cir., Oct. 17, 2014); *Runningeagle v. Ryan*, 686 F.3d 758, 774 (9th Cir. 2012).  "Because [there is] no clear answer to the question presented, . . . 'it cannot be said that a state court unreasonably applied clearly established Federal law.'" *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quoting *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

In any event, even if Rew had identified clearly established federal law permitting him to exert a due process right, it was not violated here because his trial was not fundamentally unfair.  Although the Supreme Court has never directly addressed the question, the Ninth Circuit has stated that "'[f]ederal habeas is available for improper consolidation only if the simultaneous trial 'actually render[ed the] state trial fundamentally unfair and hence, violative of due process.'" *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000) (quoting *Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir. 1991).  California Penal Code section 954 states "[a]n accusatory pleading may charge two or more different offenses connected together in their commission, or . . . two or more different offenses of the same class of crimes or offenses, under separate

_____

[6] Pursuant to Ninth Circuit Rule 36-3(c), "Unpublished decisions and orders of [the Ninth Circuit] issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1."

counts . . . ." Cal. Penal Code § 954 (West 2008). Joinder of counts is favored because it promotes efficiency. *People v. Myles*, 53 Cal. 4th 1181, 1200 (2012). Although under California law, a trial court "may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately," Cal. Penal Code § 954, the first consideration in whether to grant severance is whether the evidence would have been cross-admissible in separate trials. *People v. Armstrong*, 1 Cal. 5th 432, 456 (2016). If the evidence underlying the charges in question would be cross-admissible, "that factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges." *Id*., quoting *People v. Soper*, 45 Cal. 4th 759, 775 (2009).

In Rew's case, as the state court found, the evidence was clearly cross-admissible. During the search of Rew's house, police found Sean Simpson's car key, linking him to the attempted murder, carjacking, and assault with a firearm of Simpson (counts one through three), and a passport belonging to Manuel Cuevas, linking him to the robbery and assault with a firearm involving Cuevas (counts nine through eleven) and Jesse Aceves. (Lodgment No. 7, ECF No. 8-7 at 57-59.) When Rew was stopped and arrested on July 25, 2010, officers found one handgun in his pocket and one handgun and a camera in his car. (Lodgment No. 10, ECF No. 8-10 at 99-106.) The camera was determined to have been stolen, linking Rew to the robbery of the Irish tourists (counts four through six). (*Id.* at 105; Lodgment No. 8, ECF No. 8-8 at 130-37.) The camera had photos of Rew displaying a large amount of cash, which could have been the cash stolen from Cuevas and Aceves (counts nine through eleven). (Lodgment No. 7, ECF No. 8-7 at 73-76.) The gun in Rew's pocket (count seventeen) was found to have been the one used in the attempted murder and assault with a deadly weapon of Carlos Avila (counts thirteen, sixteen) and Martin Rodriguez (counts twelve, fourteen and fifteen). (Lodgment No. 11, ECF No. 8-11 at 18-23, 41.)

For all the foregoing reasons, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.

*Yarborough*, 540 U.S. at 4.  Nor was it based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d)(2).  Rew is not entitled to relief as to this claim.

   5.  *Ineffective Assistance of Counsel (subclaim one and claim four)*

   Rew argues his trial counsel was ineffective for three reasons.  First, in claim one, he contends that his trial counsel was ineffective for failing to present youth offender evidence at his resentencing.  (Pet., ECF No. 1 at 36-37.)  In claim four he contends counsel was ineffective when he failed to consult with a ballistics expert and failed to investigate potential witnesses from a list Rew provided to counsel.  (*Id.* at 42-43.)  Respondent argues the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Answer, ECF No. 7-1 at 31-32.)

   Rew raised these claims in the habeas corpus petition he filed in the California Supreme Court.  (Lodgment No. 3, ECF No. 8-33.)  The state supreme court denied the petition without citation of authority.  (Lodgment No. 34, ECF No. 8-34.)  This Court must therefore "look through" to the state appellate court's decision denying Rew's habeas corpus petition as the basis for its analysis.  *Ylst*, 501 U.S. at 805-06.  That court wrote:

> To establish a claim of ineffective assistance of counsel, warranting vacatur of a judgment of conviction based on counsel's failure to discover and present certain evidence at trial, the "petitioner must demonstrate that counsel knew or should have known that further investigation was necessary, and must establish the nature and relevance of the evidence that counsel failed to present or discover." (*People v. Williams* (1988) 44 Cal.3d 883, 937.)  Rew has not identified the ballistics expert or other witnesses that he faults his trial counsel for not interviewing or calling at trial.  Nor has he set out the allegedly exculpatory testimony that any of these witnesses would have provided at trial.  In the petition for writ of habeas corpus that Rew filed in the superior court in June 2017, he stated that he would "be supplementing this Petition in the near future with a declaration listing those witnesses and a [*sic*] summarizing what their testimony would have been at trial."  Rew repeats that statement, with the same typographical error, in this court.  The promised declarations has yet to materialize, however.  Rew's "unadorned and unexplained assertions of ineffective assistance of

counsel . . . are inadequate to satisfy his pleading burden." (*In re Reno*, *supra*, at pp. 499-500.)

Lodgment No. 32, ECF No. 8-32 at 3.)

To establish ineffective assistance of counsel, a petitioner must first show his attorney's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. He must also show he was prejudiced by counsel's errors. *Id*. at 694. Prejudice can be demonstrated by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993).

Further, *Strickland* requires "[j]udicial scrutiny of counsel's performance . . . be highly deferential." *Strickland*, 466 U.S. at 689. There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*. at 686-87. The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one. *Id*. at 697. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). As the Supreme Court has stated, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Although Rew raised his claim that counsel was ineffective for failing to present youth offender evidence at his resentencing in the habeas corpus petitions he filed in the San Diego Superior Court and the California Court of Appeal Court, those courts did not address the merits of the claim. (Lodgment Nos. 29-32, ECF Nos. 8-29 – 8-32.) Rew also raised the claim in the habeas corpus petition he filed in the California Supreme

Court, which denied the petition without citation of authority. (Lodgment Nos. 33-34, ECF Nos. 8-33 – 8-34.) The California Supreme Court's silent denial is presumed to be a decision on the merits, and thus this Court must determine whether the denial was contrary to, or an unreasonable application of, clearly established Supreme Court law. *Harrington*, 562 U.S. at 784-85; *Himes*, 336 F.3d at 853.

California Penal Code § 3051 governs youth offender parole hearings. The statute provides, in pertinent part, as follows:

> (d) The board shall conduct a youth offender parole hearing to consider release. At the youth offender parole hearing, the board shall release the individual on parole as provided in Section 3041, except that the board shall act in accordance with subdivision (c) of Section 4801.
>
> (e) The youth offender parole hearing to consider release shall provide for a meaningful opportunity to obtain release. The board shall review and, as necessary, revise existing regulations and adopt new regulations regarding determinations of suitability made pursuant to this section, subdivision (c) of Section 4801, and other related topics, consistent with relevant case law, in order to provide that meaningful opportunity for release.
>
> (f)(1) In assessing growth and maturity, psychological evaluations and risk assessment instruments, if used by the board, shall be administered by licensed psychologists employed by the board and shall take into consideration the diminished culpability of youth as compared to that of adults, the hallmark features of youth, and any subsequent growth and increased maturity of the individual.
>
> (2) Family members, friends, school personnel, faith leaders, and representatives from community-based organizations with knowledge about the individual before the crime or his or her growth and maturity since the time of the crime may submit statements for review by the board.

Cal. Penal Code § 3051.

California Penal Code § 4801 further outlines the factors a parole board is to consider youth offender cases:

> (c) When a prisoner committed his or her controlling offense, as defined in subdivision (a) of Section 3051, when he or she was 25 years of age or

younger, the board, in reviewing a prisoner's suitability for parole pursuant to Section 3041.5, shall give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law.

Cal. Penal Code § 4801(c).

For Rew's original sentencing, counsel filed a mitigation brief, an interview with Rew's grandfather, and a psychological evaluation. (Lodgment No. 16, ECF No. 8-16 at 9.) In addition, counsel argued for a mitigated sentence and presented the following mitigating evidence:

> [MR. DUDLEY]: I think it also – what I would say – and I don't want to repeat what I presented in our report, but I do want to talk briefly about some of those mitigating factors, because I think they are factors that – the facts of the case are ugly. But there are reasons to believe that this young man may be, as opposed to some other people in this position, maybe older people, people who have been around longer, people who have been less abused – there's a reason to believe that this person, with the right – presented with the right programs and such in prison, could actually come out as a rehabilitated individual. I think that's clear from Dr. Carroll's report, that we presented.
>
> And I would just briefly go through the fact that we have someone who was essentially, tossed around through his very early childhood, from his mother to his grandmother, to the Polinsky Center, to foster homes, then to his aunt, and finally into Mr. Jefferson's hands. And I would submit that by age 14, when that occurred, it maybe was a bit too late to undo a lot of the damage.
>
> I think in particular, there are many circumstances that could be brought specifically to the attention of the Court, but I think the fact that he was, essentially, waterboarded by his grandmother repeatedly for not being able to clean the house at age three or four, speaks, really a lot about what this young kid went through as a child.
>
> He also of extremely short stature compared to other people, which subjected him to bullying. I know we hear a lot about bullying in our society today, but this is somebody who was physically, for his entire childhood, unable to respond to the verbal and physical bullying that he went

through. And I don't think it can be doubted that that had to have a tremendous impact on his mentality.

In fact, Mr. Jefferson, in his statement, describes Treviyon as having an inferiority complex pretty much his entire childhood due to his size, to the point where, when Mr. Jefferson first got custody, in his teenage years, of Mr. Rew, they thought about putting him through some sort of hormone therapy, which apparently was rejected by other members of the family. So it was that significant of a circumstance.

This, of course, led to, not surprisingly, a really – corroborated a substantial substance abuse problem that Mr. Rew has had. And the Court is aware that he committed this offense at age 18. So it's just a matter of years after he was in Mr. Jefferson's custody. The whole inferiority complex issue is going on. Now he's abusing marijuana. He's abusing cocaine on a daily basis. He is abusing ecstasy as often as he can. We have somebody who's got a truly severe drug problem, that is undoubtedly related to the harshness of the childhood that he went through.

So I believe that – and I recognize the Court's hands are statutorily tied to a great extent by the counts of conviction and the mandates of the legislature. But to the extent that the Court can show some mitigation here, I thinks it's justified in that he was 18 years old when this happened. He's only 21 now. The harshness of the life that he's been through, and the fact that with proper and intensive counseling, and maybe some additional maturity, that there is – and I think Dr. Carroll is absolutely correct.

There is a strong possibility that Mr. Rew is a person who can become a productive member of society, who can gain control over that depth of, I'm sure, what must be a terrible feeling within his soul about what he's experienced, himself, in life. And he could actually come through this and come out of this as a productive and good citizen.

(Lodgment No. 16, ECF No. 8-16 at 17-19.)

Given what counsel presented at Rew's original sentencing hearing, Rew has not shown that counsel's performance at his resentencing was deficient. *Strickland*, 466 U.S. at 687. Counsel presented a substantial amount of mitigation evidence at Rew's first sentencing, including a statement in mitigation, an interview with Rew's grandfather detailing Rew's chaotic and abusive upbringing, and a psychological report. (Lodgment

No. 16, ECF No. 8-16 at 9.)  Rew does not explain what further evidence counsel could have or should have presented at his resentencing hearing.  For the same reason, Rew has also not established he was prejudiced by counsel's performance.  *Strickland*, 466 U.S. at 694.  He has not established the failure to place additional information relevant to a future youth offender parole hearing into the record will change the outcome of his parole hearing.  *Id.*

As to Rew's claims regarding counsel's failure to consult with a ballistics expert and investigate and interview witnesses, Rew does not identify any ballistic experts counsel should have consulted, what such experts would have offered as testimony in Rew's case, and how that testimony would have helped Rew's defense.  Rew also does not identify what witnesses he told counsel about, what those witnesses would have said, and how those witness's testimony would have altered the outcome of his case.  Without this information, Rew has not established either the deficient performance prong of *Strickland*, or the prejudice prong.  *Id*. at 687, 694; *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.")

For all the foregoing reasons, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. Yarborough, 540 U.S. at 4.  Nor was it based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d)(2).  Rew is not entitled to relief as to this claim

6. *Admission of Gang Evidence (claim five)*

In claim five, Rew contends the admission of gang evidence, which the state appellate court found was insufficient to support the jury's true findings on the gang enhancements contained in counts one, two and three and the weapons enhancements in counts one and two, violated his federal due process rights and denied him a fair trial. (Pet., ECF No. 1 at 43-44.)  He argues the evidence should never have been admitted because it was insufficient to support those enhancements and its admission was therefore prejudicial to Rew's case.  (*Id.*)  Respondent contends the claim fails to present a federal

question and, in the alternative, Rew did not suffer prejudice from the admission of the gang evidence because he admitted to being a gang member shortly before he shot Simpson.  (Answer, ECF No. 7-1 at 33-38.)

Rew raised this claim in the habeas corpus petition he filed in the California Supreme Court.  (Lodgment No. 3, ECF No. 8-33.)  The state supreme court denied the petition without citation of authority.  (Lodgment No. 34, ECF No. 8-34.)  This Court must therefore "look through" to the state appellate court's decision denying Rew's habeas corpus petition as the basis for its analysis.  *Ylst*, 501 U.S. at 805-06.  That court denied the claim on procedural grounds, writing as follows:

Rew also raised this claim in the habeas corpus petition he filed in the San Diego Superior Court.  (Lodgment No. 29, ECF No. 8-29.)  The superior court likewise imposed a procedural bar but also decided the claim on the merits.  (Lodgment No. 30, ECF No. 8-30 at 7-10.)  After quoting extensively from *People v. Albarran*, 149 Cal. App. 4th 214 (2007), cited by Rew, and noting that gang evidence is "admissible if it is logically relevant to some material issue in the case, other than character evidence, is not more prejudicial than probative and is not cumulative . . . ," the superior court wrote:

> Here, notwithstanding his reliance on *Albarran*, petitioner does not allege that the so-called "gang evidence" was not relevant and admissible regarding the substantive charges.  Nor does lack of relevance or admissibility apparent from his description of the evidence at trial.  (See, Petn., pp. 10-23, especially pp. 10-11.)  Petitioner cites no authority for ordering a new trial on all charges simply because there was insufficient evidence to support a duly alleged gang enhancement.

(*Id.* at 8-10.)

A state court's erroneous evidentiary ruling cannot form the basis for federal habeas relief unless federal constitutional rights are affected.  *Whelchel v. Washington*, 232 F.3d 1197, 1211 (9th Cir. 2000) citing *Lincoln v. Sunn*, 807 F.2d 805, 816 (9th Cir. 1987).  "While a petitioner for federal habeas relief may not challenge the application of state evidentiary rules, he is entitled to relief if the evidentiary decision created an

absence of fundamental fairness that 'fatally infected the trial.'" *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 897 (9th Cir. 1996) quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986). "[A] trial court's ruling does not violate due process unless the evidence is 'of such quality as necessarily prevents a fair trial.'" *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998) (internal quotation marks omitted). Admission of evidence violates due process "[o]nly if there are no permissible inferences the jury may draw from the evidence." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). If a due process error is found, the Court must then determine if it had a "substantial and injurious effect in determining the jury's verdict." *Brecht*, 507 U.S. at 622.

As Respondent notes, there is no clearly established Supreme Court law which holds that prejudicial evidence is inadmissible or violates due process. Indeed, the Supreme Court expressly reserved deciding that issue in *Estelle v. McGuire*, 502 U.S. 62, 75, n.5 (1991); see *Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008); *Alberni v. McDaniel*, 458 F.3d 860, 864 (9th Cir. 2006). As the Ninth Circuit has noted:

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, [citation omitted], it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application.

*Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (citing *Williams v. Taylor*, 529 U.S. 362, 375 (2000) and *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

In any event, even if the gang evidence was improperly admitted it did not have a substantial and injurious effect on the verdict. *Brecht*, 507 U.S. at 638. As to counts one through three, victim Simpson identified Rew in court and in a pre-trial lineup. (Lodgment No. 6, ECF No. 8-6 at 14; Lodgment No. 7, ECF No. 8-7 at 69.) Simpson's car keys were found at Rew's house. (Lodgment No. 7, ECF No. 8-7 at 57.) Ruiz testified that on or about July 22 or 23, 2010, Rew came to Ruiz's house and told Ruiz he

had shot someone because the person had "cuzzed" him.  (Lodgment No. 8, ECF No. 8-8 at 84-85.)  When Rew arrived at Moreno's house on July 23, he was driving Simpson's gray Toyota which Rew told Moreno was "hot," meaning stolen.  (Lodgment No. 9, ECF No. 8-9 at 25-27; Lodgment No. 6, ECF No. 8-6 at 10.)  As to counts seven through eleven, victim Aceves identified Rew as his assailant in court.  (Lodgment No. 9, ECF No. 8-9 at 143.)  Cuevas's passport was found during the search of Rew's home.  (Lodgment No. 7, ECF No. 8-7 at 58-59.)  Photos of Rew with a large amount of cash, which could have been the cash stolen during the Aceves and Cuevas robbery, were found on the camera stolen from the Irish tourists.  (*Id.* at 73.)  As to counts twelve through sixteen, the bullet extracted from victim Avila's shoe matched the gun retrieved from Rew's pocket upon his arrest.  (Lodgment No. 10, ECF No. 8-10 at 63; Lodgment No. 11, ECF No. 8-11 at 23.)  As to count seventeen, Officer Mario Perez testified that on July 25, 2010, he saw Rew walking away from a car and acting suspiciously; he stopped Rew, frisked him, and found a gun in Rew's front pocket.  (Lodgment No. 10, ECF No. 8-10 at 99.)  As to count eighteen, Officer Terranova testified he tried to pull Rew over on July 29, 2010.  (Lodgment No. 10, ECF No. 8-10 at 78-80.)  Rew eventually stopped the car, got out, and ran away.  (*Id.* at 80-82.)  Thus, there was substantial evidence admitted at trial, including eyewitness identification and physical evidence, which supported each of the crimes of which Rew was convicted independent of the gang evidence upon which the jury would have made.  *See Smith v. Scribner*, 384 Fed. Appx. 672, 673 (9th Cir. 2010) (stating that "[an] error cannot be said to have had a substantial and injurious effect on the jury's verdict [when there is] overwhelming independent evidence introduced against [the defendant] at trial").

For the foregoing reasons, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  *Yarborough*, 540 U.S. at 4.  Nor was it based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d)(2).  Rew is not entitled to relief as to this claim.

///

## V.  **CONCLUSION**

The Court submits this Report and Recommendation to Chief United States District Judge Larry Alan Burns under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

**IT IS HEREBY RECOMMENDED** that the Court issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition for Writ of Habeas Corpus.

**IT IS ORDERED** that no later than **April 22, 2019** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **May 6, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

 **IT IS SO ORDERED.**

Date:   April 5, 2019

Hon. Mitchell D. Dembin
United States Magistrate Judge